## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PLASTICS SYSTEMS PACKAGING MOLDING, INC., | : | Civil No. 1:24-CV-01030 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| FREDERIC CONTINI and MÉLINE CONTINI, | : | |
| | : | |
| Defendants. | : | Judge Jennifer P. Wilson |

## MEMORANDUM

Pending before the court is a motion to dismiss the counterclaim filed by Plaintiff/Counterclaim Defendant Plastics Systems Packaging Molding, Inc. ("PSPm"). (Doc. 15.) PSPm seeks to dismiss all three counts of Defendants/Counterclaim Plaintiffs Frederic and Méline Contini's counterclaim. For the reasons that follow, the motion will be granted.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

PSPm filed the underlying complaint in this action on April 1, 2024 in Lebanon County Court of Common Pleas. (Doc. 1-1, p. 83.)[1] PSPm's complaint asserts claims of conversion, fraud and intentional misrepresentation, breach of fiduciary duty and duty of loyalty, civil conspiracy, and unjust enrichment. (*Id.* at 88–93.) PSPm alleges that, "over the course of approximately 5 years, the

---

[1] For ease of reference, the court uses the page numbers from the CM/ECF header.

Continis stole approximately $444,210 from PSPm." (*Id.* at 85.)  Defendants, Frederic Contini ("Mr. Contini") and Méline Contini ("Ms. Contini") (collectively, "Defendants") timely filed a notice of removal on June 24, 2024, removing this action to this court.  (Doc. 1.)  Defendants filed their answer and counterclaim on July 1, 2024, and amended counterclaim on August 12, 2024.  (Docs. 4, 10.)

Defendants are "currently residing in and are domiciled in France," and were citizens, residents, and domiciliaries of France at the time when this lawsuit was filed on April 1, 2024.   (Doc. 4, ¶ 2; Doc. 1-2, ¶ 5; Doc. 1-3, ¶ 5.)  However, Mr. Contini lived in Pennsylvania from August 2015 until April 14, 2023, while Ms. Contini lived in Pennsylvania from August 2015 until June 23, 2023. (Doc. 1-2 ¶ 2; Doc. 1-3, ¶ 2.)  Mr. Contini also avers that he worked for PSPm from 2015 until 2023, while Ms. Contini avers that she worked for PSPm from 2016 until 2023. (Doc. 4, ¶ 5.)  PSPm, for its part, avers that "[t]he Continis were management level employees – Frederic Contini was PSPm's [p]lant [m]anager, while Meline [sic] Contini was PSPm's accounting manager."  (Doc. 1-1, p. 84.)  All of the claims in this lawsuit arise from Defendants' employment with PSPm in Pennsylvania.

In 2012, Mr. Contini began working periodically for Plastics Systems Packaging, Inc. ("PSP"), a parent company of PSPm.  (Doc. 10, ¶ 8.)  Some of Mr. Contini's work for the company between 2012 and 2014 occurred at a manufacturing facility in Lebanon, Pennsylvania that PSPm had recently acquired.

(*Id.* ¶ 8.)  In late 2014, PSPm asked Mr. Contini to relocate permanently to the United States to manage the manufacturing facility in Lebanon.  (*Id.* ¶ 10.)

Mr. Contini avers that he and PSPm entered into a "written contract" on December 19, 2014, in which PSPm agreed to provide Mr. Contini with a $121,000 annual salary, a housing allowance of $18,000, expenses for Mr. Contini and his family members to visit France each year, eligibility for up to $6,800 in bonus compensation each year, health insurance, moving expenses, a company car, and a "contribution to the French pension during the expatriation period."  (*Id.* ¶ 11.)  The amended counterclaim explains that the "contract was written in French" and provides only a copy of the French version of the contract, but includes an English translation of the contract.  (*Id.* ¶ 12.)  That translation specifies that "only the English version will be enforceable."  (*Id.*)

Mr. Contini avers that, on January 7, 2015, he entered into "a second agreement" with PSPm, again written in French, which specified that Mr. Contini would work for PSPm for an "international secondment, the duration of which is set at three years (a period that may be extended or shortened by mutual agreement between the parties)."  (*Id.* ¶¶ 17, 42.)  The written agreement also specified that, "[a]t the end of this international secondment," Mr. Contini "will return to the PSP company or a company in which we will have common interests."  (*Id.* ¶ 17.)  Likewise, the agreement prescribed that Mr. Contini's "reintegration into PSP or a

group company" upon his return to France "will be in a position similar to the one held today or as compatible as possible" with Mr. Contini's "skills at the time of [his] integration." (*Id.*)

In August 2015, Defendants and their son moved from France to Lebanon, Pennsylvania to work for PSPm, "based on the promises and representations of PSPm." (*Id.* ¶ 18.) They returned to France nearly eight years later. (Doc. 1-2, ¶ 2; Doc. 1-3, ¶ 2.)

Count I of Defendants' counterclaim alleges the breach of an employment contract between Mr. Contini and PSPm in which PSPm, along with paying Mr. Contini a salary, purportedly promised to make contributions to the French pension system for the duration of Mr. Contini's employment. (Doc. 10, ¶ 42.) The purported contract dated December 19, 2014, suggests that an unspecified "contribution to the French pension" will be made "during the expatriation period." (*Id.* ¶ 12.) Later, the written agreement dated January 7, 2015, mentions a "CNAV pension" and explains that Mr. Contini "will be affiliated" with the "CFE." (*Id.* ¶ 17.) The January 7, 2015 agreement also explains that, regarding a "supplementary pension," PSPm "undertakes to immediately join the CRE – IRCAFEX supplementary scheme, it being understood that the contributions will be calculated on the basis of a theoretical gross annual remuneration set at €80400." (*Id.* ¶ 17.)

Defendants aver that, based on Mr. Contini's "age and salary, both Mr. Contini and PSPm knew that the cost for the 'contribution to the French pension during the expatriation period' would be approximately $44,000.00 per year." (*Id.* ¶ 16 (referring to the purported contract dated Dec. 19, 2014).) Defendants also allege that PSPm, after contributing to Mr. Contini's French pension until August 15, 2015, as it was "contractually obligated to do so… failed to contribute to Mr. Contini's pension from August 16, 2015 through July 1, 2017." (*Id.* ¶ 23.) Years later, PSPm allegedly "stopped paying Mr. Contini's pension in 2021 and did not make the pension payment for 2022 either." (*Id.* ¶ 29.)

In Count I, Defendants also allege that PSPm breached its obligation in the employment contract to provide Mr. Contini "the earned bonuses of $6,800 per year for the duration of the term of his contract with PSPm." (Doc. 10, ¶ 49.) The purported contract dated December 19, 2014, refers to the possibility of Mr. Contini earning up to $6,800 per year in bonuses. (*Id.* ¶ 12.) Defendants further aver that PSPm failed to provide Mr. Contini with access to PSPm's profit-sharing plan. (*Id.* ¶¶ 40, 48.)

Importantly, Defendants allege that, although the term of Mr. Contini's employment contract was for "three years," the "contract was thereafter renewed by mutual agreement between the parties." (*Id.* ¶ 43.) Defendants also assert that they "are entitled to deduct all damages resulting from PSPm's breach of the

contractual agreement(s) between the parties from any amount allegedly due from the Continis to PSPm."  (Doc. 4, ¶ 22.)

In Count II of their counterclaim, Defendants allege the breach of an employment contract between Ms. Contini and PSPm in which PSPm "would compensate her for the work that she performed."  (Doc. 10, ¶ 51.)  According to the counterclaim, "PSPm breached its contract with Ms. Contini by, among other things, failing to pay her wages in accordance with her employment contract for a period of time."  (*Id.* ¶ 52.)  Defendants aver that PSPm did not pay Ms. Contini wages for work that she performed for them under her employment contract "for an entire year" that spanned from 2016 until December of 2017.  (*Id.* ¶ 24.) Defendants also allege that PSPm "did not pay Ms. Contini for the final pay period that she worked for PSPm," and that the "wages due to Ms. Contini are approximately $2,900.00."  (*Id.* ¶¶ 36–37.)  Furthermore, Defendants allege in Count II that "PSPm failed to pay Ms. Contini her accumulated PTO and failed [to] make a required matching contribution" to Ms. Contini's 401(k).  (*Id.* ¶ 53.) Specifically, Defendants aver that PSPm owes Ms. Contini "a 401(k) matching contribution of approximately $116.00" and "accumulated PTO in the amount of approximately $3,480.00."  (*Id.* ¶¶ 38–39.)

In Count III, Defendants allege that PSPm violated the Pennsylvania Wage Payment and Collection Law (WPCL) by failing to pay Ms. Contini

"compensation that was due to her" under the WPCL. (*Id.* ¶¶ 56–57.) Defendants contend that the "compensation due to Ms. Contini are 'wages' within the meaning of" the WPCL. (*Id.* ¶ 56.) Defendants argue that Ms. Contini is "entitled to recover all unpaid salary and benefits, plus liquidated damages equal to 25% of the total amount of wages due, together with attorneys' fees and cost of suit." (*Id.* ¶ 59.) They estimate that the "principal amount due to Ms. Contini is approximately $6,500.00." (*Id.* ¶ 60.)

On August 26, 2024, PSPm filed the instant motion to dismiss Defendants' counterclaim and its brief in support on September 6, 2024. (Docs. 15, 18.) Defendants filed their brief in opposition to PSPm's motion on September 19, 2024. (Doc. 19.) PSPm filed its reply brief on October 3, 2024. (Doc. 20.) Thus, the motion is ripe for review.

## JURISDICTION AND VENUE

The court has subject-matter jurisdiction under 28 U.S.C. § 1332(a)(2), which provides district courts with original jurisdiction in civil cases where the amount in controversy exceeds $75,000, excluding interests and costs, and the controversy is between "citizens of a State" and "subjects of a foreign state." 28 U.S.C. § 1332(a)(2). Venue is proper in the Middle District of Pennsylvania because a "substantial part of the events or omissions giving rise to the claim occurred" there. 28 U.S.C. § 1391(b)(2).

## STANDARD OF REVIEW

In order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Conclusory allegations of liability are insufficient" to survive a motion to dismiss. *Garrett v. Wexford Health*, 938 F.3d 69, 92 (3d Cir. 2019) (quoting *Iqbal*, 556 U.S. at 678–79). To determine whether a complaint survives a motion to dismiss, a court identifies "the elements a plaintiff must plead to state a claim for relief," disregards the allegations "that are no more than conclusions and thus not entitled to the assumption of truth," and determines whether the remaining factual allegations "plausibly give rise to an entitlement to relief." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012), *abrogated on other grounds as recognized in Mack v. Yost*, 968 F.3d 311, 319 n.7 (3d Cir. 2020).

## DISCUSSION

PSPm argues that the court should dismiss each count of the amended counterclaim under Rule 12(b)(6) for failure to state a claim for which relief can be granted. The court will address each count in turn.

## A. The Court Will Grant PSPm's Motion to dismiss as to Count I

### 1. Defendants Have Sufficiently Alleged Facts Showing That Mr. Contini Initially Had An Employment Contract With PSPm

Defendants allege breaches of purported employment contracts between themselves and PSPm.  (Doc. 10, ¶¶ 42–44, 51–52.)  PSPm, for its part, contends that Defendants' amended counterclaims "fail to plead sufficient facts to establish a contractual relationship between PSPm and Mr. Contini or Ms. Contini."  (Doc. 15, ¶ 12.)

A "contract is formed" under Pennsylvania law "when the parties to it" 1) "reach a mutual understanding," 2) "exchange consideration," and 3) "delineate the terms of their bargain with sufficient clarity."  *Weavertown Transport Leasing, Inc. v. Moran*, 834 A.2d 1169, 1172 (Pa. Super. Ct. 2003).  To state a claim for breach of contract under Pennsylvania law, including the breach of an employment contract, a plaintiff must plead 1) "the existence of a contract, including its essential terms," 2) "a breach of a duty imposed by the contract," and 3) "resultant damages."  *CoreStates Bank, N.A. v. Cutillo*, 723 A.2d 1053, 1058 (Pa. Super. Ct. 1999).

In the employment context, Pennsylvania has a "firmly entrenched presumption" that employees are "at-will" and can be "discharged for any reason or no reason at all."  *Rapagnani v. Judas Co.*, 736 A.2d 666, 669 (Pa. Super. Ct. 1999).  Thus, the employee alone has the "burden of overcoming the presumption"

9

of at-will employment. *Luteran v. Loral Fairchild Corp.*, 688 A.2d 211, 214 (Pa. Super. Ct. 1997). To successfully "rebut the presumption of at-will employment, a party must establish one of the following: (1) an agreement for a definite duration; (2) an agreement specifying that the employee will be discharged for just cause only; (3) sufficient additional consideration; or (4) an applicable recognized public policy exception." *Id.*; *Janis v. AMP, Inc.*, 856 A.2d 140, 144 (Pa. Super. Ct. 2004). When an employment arrangement "does not contain a definite term, it will be presumed that the employment at-will rule applies." *Marsh v. Boyle*, 530 A.2d 491, 493 (Pa. Super. Ct. 1987). In other words, "an employment contract for a broad, unspecified duration does not overcome the presumption of at-will employment" because "[d]efiniteness is required" to rebut that presumption. *Id.* (citing *Murphy v. Publicker Indus.*, 357 A.2d 47, 51–52 (Pa. Super. Ct. 1986)); *but see Janis*, 856 A.2d at 144, 146 (finding that a "summary of policy provisions" for an overseas job assignment that was "expected to last *three years* but no more than *five years*" supported, in light of the totality of the circumstances, that the parties had an employment contract "for a definite, minimum time period of three to five years").

Likewise, the "rate of compensation" must be "clearly established" to "prove the existence of" a binding, enforceable employment contract. *Kassab v. Ragnar Benson, Inc.*, 254 F. Supp. 830, 832 (W.D. Pa. 1966); *see also Param Techs., Inc.*

*v. Intelligent Home Sols., Inc.*, No. 04-1348, 2005 WL 2050446, at *4 (E.D. Pa. Aug. 25, 2005) (explaining that, "if the rate of compensation is not clearly established, a court may find that no binding contract exists").

Here, Mr. Contini has sufficiently alleged that he had an employment contract with PSPm under the Rule 12(b)(6) standard. Similar to the contract in *Janis v. AMP, Inc.*, 856 A.2d 140 (Pa. Super. Ct. 2004), which the Pennsylvania Superior Court found lasted for a "definite, minimum period of three to five years," Mr. Contini alleged that his contract lasted for a "duration" of "three years, (a period that may be extended or shortened by mutual agreement between the parties)." *Janis*, 856 A.2d at 146. (Doc. 10, ¶ 17.)

PSPm disputes the existence of an employment contract with Mr. Contini, and contends that Defendants have "assert[ed] that… two alleged contracts were executed in 2014 and 2015" based on the written agreements signed on December 19, 2014, and January 7, 2015. However, Defendants have pleaded sufficient facts at this stage to show that Mr. Contini and PSPm had an initial employment contract. (Doc. 15, ¶¶ 12, 18). Importantly, the document dated December 19, 2014 that Mr. Contini attached to the complaint clearly established that Mr. Contini had a rate of compensation of $121,000 annually, which was to be paid in monthly installments. *See Kassab*, 254 F. Supp. at 832. (Doc. 10, ¶ 17.) The document dated January 7, 2015 does not contradict this. In fact, the text of the

11

January 7, 2015 document explains that it acts "[a]ccording to," or that it seemingly supplements rather than supplants, the "terms of the employment contract" that are "given to" Mr. Contini elsewhere.  (Doc. 10, ¶ 17.)  Defendants also suggest in their brief in opposition to PSPm's motion to dismiss that the January 7, 2015 document constituted a "written Contract addendum."  (Doc. 19, pp. 3–4.)  Thus, Defendants have pleaded sufficient facts at this stage to show that Mr. Contini and PSPm initially had an employment contract, which is a prerequisite for alleging breach.

> ### 2. Defendants Have Not Sufficiently Alleged That Mr. Contini's Employment Contract With PSPm Was Expressly Or Impliedly Renewed

Defendants have not sufficiently pleaded facts to support the claim that Mr. Contini's alleged initial employment contract was expressly or impliedly renewed by the parties' mutual agreement.  PSPm contests whether Mr. Contini had an employment contract with PSPm and whether the alleged contract was renewed, whereas Defendants contend that Mr. Contini's contract was renewed by the parties' mutual agreement.  (Doc. 15, ¶¶ 12, 18–22; Doc. 10, ¶ 43.)

Pennsylvania law allows employment contracts to be impliedly renewed by parties' conduct under some circumstances.  When two parties form a "contract of employment for a definite time" and "the employee's services are continued after the expiration of the time, without objection," an "inference" can be made "that the

parties have assented to another contract for a term of the same length with the same salary and conditions of service." *Burge v. Western Pa. Higher Educ. Council*, 570 A.2d 536, 538 (Pa Super. Ct. 1990) (citing *Smith v. Shallcross, et al.*, 69 A.2d 156, 158 (Pa. Super. Ct. 1949)).  Likewise, the "general principles of contract law" provide that "when a contract lapses but the parties to the contract continue to act as if they are performing under the contract, the material terms of the prior contract will survive intact unless one of the parties clearly and manifestly indicates, through words or other conduct, that it no longer wishes to be bound thereby, or both parties mutually intend that the terms not survive." *Ludens, Inc. v. Local Union No. 6 of the Bakery, Confectionary, & Tobacco Workers' Int'l Union of Am.*, 28 F.3d 347, 355–56 (3d Cir. 1994), abrogated on other grounds by *Pittsburgh Mailers Union Local 22 v. PG Publishing Co.*, 30 F.4th 184, 189 (3d Cir. 2022).

Here, Defendants have not alleged sufficient facts to suggest that Mr. Contini's alleged employment contract with PSPm was renewed by mutual agreement, whether expressly by the parties' written or oral promises or impliedly by the parties' course of conduct.  Admittedly, the December 19, 2014 "employment contract" discusses PSPm's promise to pay Mr. Contini a salary of $121,000 per year in monthly installments, while the January 7, 2015 document explains that the contract has a "duration of…. three years" that "may be extended

or shortened by mutual agreement between the parties." (Doc. 10, ¶¶ 12, 17.)
However, Defendants' pleadings include no affirmative facts regarding whether
Mr. Contini continued to receive a salary after the expiration of his alleged three-
year contract, as well as no affirmative facts regarding how much he was actually
paid during and after the period of his alleged contract. Defendants have simply
not alleged sufficient facts to support a showing that "the parties to the contract,"
Mr. Contini and PSPm, "continue[d] to act as if they [were] performing under the
contract" after the purported three-year term expired. *Ludens, Inc.*, 28 F.3d at
355–56. Thus, Defendants have not pleaded sufficient facts to show that Mr.
Contini's alleged employment contract was renewed.

### 3. Count I Will Be Dismissed Because Defendants Failed To Sufficiently Allege That Mr. Contini's Contract Was Renewed And Failed To Sufficiently Plead the Other Essential Terms Of His Contract That PSPm Allegedly Breached

Count I of Defendants' amended counterclaim will be dismissed without
prejudice because Defendants have not sufficiently alleged that Mr. Contini's
employment contract was renewed. Defendants also have not sufficiently pleaded
two essential terms that they contend PSPm violated, including the amount that
PSPm allegedly promised to contribute to Mr. Contini's contract and PSPm's
alleged contractual obligation to provide Mr. Contini access to a profit-sharing
plan. Furthermore, Defendants have not sufficiently shown the nature of PSPm's

breach regarding the alleged nonpayment of Mr. Contini's bonus of $6,800 per year.

Under Pennsylvania law, "there must be a meeting of the minds of the parties and an intent to enter into a contract before a court can find an existing contractual obligation." *Irma Hosiery Co. v. Home Indem. Co.*, 276 F.2d 212, 214 (3d Cir. 1960). Parties must "agree on essential terms and manifest an intention to be bound by those terms." *Schulz v. U.S. Boxing Ass'n*, 105 F.3d 127, 136 (3d Cir. 1997) (internal citations omitted). A meeting of the minds and a manifestation of intent to be bound must be shown with regard to each essential term. *Forte Sports, Inc. v. Toy Airplane Gliders of Am., Inc.*, 371 F. Supp. 2d 648, 649 (E.D. Pa. 2004). For example, in *Deron v. SG Printing, Inc.*, No. 3:11cv1934, 2012 WL 1902577, at *4 (M.D. Pa. May 25, 2012), when a plaintiff failed to allege the essential terms of a purported employment contract in their pleadings and did not attach a copy of the purported employment contract to their complaint, the court found that the plaintiff failed to show the existence and breach of a contractual obligation.

Here, Defendants have not sufficiently shown mutual assent, or a meeting of the minds, between Mr. Contini and PSPm with regard to the allegedly agreed annual contribution of $44,000.00 to Mr. Contini's French pension. (Doc. 10, ¶ 17.) While Mr. Contini did attach a copy of his alleged *employment* contract, it

does not include the specific amount of the pension contribution. The alleged

employment contract dated December 19, 2014, suggests that an unspecified

"contribution to the French pension" will be made "during the expatriation period."

(Doc. 10, ¶ 12.)  Likewise, the alleged supplemental written agreement dated

January 7, 2015, briefly mentions a "CNAV pension" and explains that Mr.

Contini "will be affiliated" with the "CFE."  (*Id.* ¶ 17.)  The alleged January 7,

2015 agreement also sets forth that, regarding a "supplementary pension," PSPm

"undertakes to immediately join the CRE – IRCAFEX supplementary scheme, it

being understood that the contributions will be calculated on the basis of a

theoretical gross annual remuneration set at €80400."  (*Id.* ¶ 17.)

In their pleadings, Defendants merely allege that, based on Mr. Contini's

"age and salary, both Mr. Contini and PSPm knew that the cost for the

'contribution to the French pension during the expatriation period' would be

approximately $44,000.00 per year."  (*Id.* ¶ 16.)  Beyond this conclusory statement

that the parties agreed to this amount "based on [Mr. Contini's] age and salary,"

Defendants pleaded no additional factual allegations that explain whether, how,

and why the parties reached an agreement on that $44,000 alleged annual

contribution.  (*Id.* ¶ 16.)  Moreover, Defendants provide no context regarding the

supplementary pension that the alleged written agreement dated January 7, 2015

refers to, such as whether the alleged $44,000 amount is even related to PSPm's

alleged promise to calculate "contributions" for the supplemental pension "on the basis of a theoretical gross annual remuneration set at €80400." (*Id.*) Overall, Defendants have failed to sufficiently allege mutual assent regarding the essential term of contributions to Mr. Contini's French pension.

Also, Defendants have failed to sufficiently allege that PSPm had a contractual obligation to provide Mr. Contini with access to its profit-sharing plan. Although Defendants attached a copy of Mr. Contini's purported employment contract, that purported employment contract makes no mention of a promise by PSPm to provide Mr. Contini with access to PSPm's profit-sharing plan. Neither the December 19, 2014 nor the January 7, 2015 document mentions this profit-sharing plan. No other discussion of the parties' alleged mutual assent to this essential term is provided in the pleadings. Thus, Defendants have failed to sufficiently allege mutual assent regarding a purported contractual obligation by PSPm to provide Mr. Contini with access to its profit-sharing plan.

Furthermore, Defendants' claim that PSPm failed to provide Mr. Contini with his "earned bonuses of $6,800 for the duration of his contract with PSPm" is insufficiently vague, particularly because Defendants have not sufficiently pleaded facts that support the alleged renewal of Mr. Contini's employment contract. (Doc. 10, ¶ 49.) Because Defendants have not pleaded sufficient facts to support the alleged renewal of Mr. Contini's employment contract, it is not clear whether and

17

when PSPm had a contractual obligation to pay a bonus to Mr. Contini, as well as whether and when PSPm purportedly breached that alleged obligation.

For these reasons, the court will grant PSPm's motion to dismiss Count I of Defendants' amended counterclaim without prejudice.

### B. Count II Will Be Dismissed Because Ms. Contini Has Not Sufficiently Alleged The Existence Of An Employment Contract With PSPm

Count II of Defendants' amended counterclaim will be dismissed because Ms. Contini has not sufficiently alleged the existence of an employment contract with PSPm.  Defendants aver that "PSPm breached its contract with Ms. Contini by, among other things, failing to pay her wages in accordance with her employment contract for a period of time."  (Doc. 10, ¶ 52.)  They allege that PSPm did not pay Ms. Contini wages for work that she performed under her employment contract "for an entire year" that spanned from 2016 until December 2017.  (*Id.* ¶ 24.)  They also allege that PSPm "did not pay Ms. Contini for the final pay period that she worked for PSPm," and that PSPm owes Ms. Contini approximately $2,900 in unpaid wages.  (*Id.* ¶¶ 36–37.)

Likewise, Defendants allege in Count II that "PSPm failed to pay Ms. Contini her accumulated PTO and failed [to] make a required matching contribution" to Ms. Contini's 401(k).  (*Id.* ¶ 53.)  They aver that PSPm owes Ms. Contini "a 401(k) matching contribution of approximately $116.00" and "accumulated PTO in the amount of approximately $3,480.00."  (*Id.* ¶¶ 38–39.)

For its part, PSPm contests that it had an employment contract with Ms. Contini at all, and disputes the "length of time of Ms. Contini's employment," but agrees that Ms. Contini "was employed by PSPm for some period of time." (Doc. 18, p. 2, n.1.)

Once again, a plaintiff alleging the breach of an employment contract under Pennsylvania law must plead 1) "the existence of a contract, including its essential terms," 2) "a breach of a duty imposed by the contract," and 3) "resultant damages." *CoreStates Bank*, 723 A.2d at 1058. To prove the "existence of a binding contract," the "rate of compensation" must "be clearly established." *Kassab*, 254 F. Supp. at 832; *see also Param Techs., Inc.*, 2005 WL 2050446, at *4 (explaining that, "if the rate of compensation is not clearly established, a court may find that no binding contract exists"). When proving the existence and terms of an alleged contract, parties should attach a copy of the contract to the complaint or summarize the contract's essential terms. *See In re Domiano*, 422 B.R. 497, 504 (Bankr. M.D. Pa. 2009) (dismissing a complaint for failure to state a claim because "neither a copy of the contract was attached to the Amended Complaint nor were its terms even summarized" and reasoning that the court "should not be asked to speculate as to the terms of the alleged contract").

Here, Defendants have failed to attach a copy of Ms. Contini's purported employment contract with PSPm to their amended counterclaim. They have also

not identified the rate of compensation at which PSPm paid Ms. Contini under the

purported contract.  Because Defendants have not included a copy of Ms. Contini's

purported employment contract in their amended counterclaim and have not

identified the rate at which Ms. Contini was to be paid under the contract, they

have failed to sufficiently allege the existence of an employment contract,

including its essential terms.  Thus, the motion to dismiss Count II will be granted

without prejudice.

**C. Count III Will Be Dismissed Because A Claim For Relief Under Pennsylvania's Wage And Payment Collection Law (WPCL) Requires The Existence Of A Valid Employment Contract**

Count III will be dismissed without prejudice because Defendants' claim

that PSPm violated Pennsylvania's Wage and Payment Collection Law ("WPCL")

in its conduct towards Ms. Contini presupposes the existence of a valid

employment contract between PSPm and Ms. Contini.  The WPCL "does not

create a right to compensation." *Weldon v. Kraft, Inc.*, 896 F.2d 793, 801 (3d Cir.

1990).  Instead, it "provides a statutory remedy when the employer breaches a

contractual obligation to pay earned wages." *Id.*  When evaluating "whether

specific wages are earned," the "contract between the parties governs." *Id.*  When

a party does not allege sufficient facts to support the existence of an employment

contract in their complaint, such as by pleading the "contract's essential terms" or

attaching a copy of the contract to their complaint, a WPCL claim "must fail"

because "the contractual obligation to pay wages is a necessary element of a WPCL claim." *Deron*, 2012 WL 1902577, at \*5–6.

Here, Defendants' claim that PSPm violated Pennsylvania's WPCL must fail because Defendants have failed to allege the existence of a valid contract between PSPm and Ms. Contini.  Without a valid contract between PSPm and Ms. Contini, no "contractual obligation to pay earned wages" has been breached.  *Weldon*, 896 F.2d at 801.  Consequently, Count III of the amended counterclaim will be dismissed without prejudice.[2]

## CONCLUSION

For the reasons stated herein, the court will grant PSPm's motion to dismiss, and the amended counterclaim will be dismissed without prejudice.

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Judge
Middle District of Pennsylvania

Dated:  March 28, 2025

---

[2] PSPm also argues that Defendants' amended counterclaims are "largely barred by the applicable statutes of limitations based on dates specifically alleged in Defendants' pleading." (Doc. 15, p. 8).  Because the court finds that Defendants have failed to state a claim regarding the existence and breach of the purported contractual obligations in Counts I, II, and III, the court need not reach the question of whether the statute of limitations bars some or all of Defendants' claims.